**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ROLANDO G. SANCHEZ, | ) |
| | ) Case No. 14-22667-rdd |
| Debtor. | ) |

| | |
|---|---|
| IAN J. CURRIE, | ) |
| | ) Adv. Proc. No. 14-08252 (SHL) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROLANDO G. SANCHEZ, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

July 10, 2015

TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ................................................................................................2

    Ceres .........................................................................................................................2

    2006 Action ..............................................................................................................3

    The Underlying Action .............................................................................................4

    Adversary Proceeding ..............................................................................................4

ARGUMENT .....................................................................................................................5

    I     THE STANDARD OF REVIEW ................................................................5

    II    THE STATE COURT'S ORDER IS ENTITLED TO COLLATERAL ESTOPPEL ..................................................................................................6

    III   THE JUDGMENT IS NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(4) .........................................................................................9

CONCLUSION ................................................................................................................14

# TABLE OF AUTHORITIES

*Page*

CASES

*Adam v. Cutner & Rathkopf,*
    238 A.D.2d 234 (1st Dep't 1997) ................................................................................8

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................................5, 6

*Brown v. Eli Lilly & Co.,*
    654 F.3d 347 (2d Cir. 2011) .......................................................................................6

*Bullock v. BankChampaign, N.A.,*
    133 S. Ct. 1754 (2013) .............................................................................................13

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...................................................................................................5

*D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.,*
    76 N.Y.2d 659 (1990) ................................................................................................8

*Denton v. Hyman (In re Hyman),*
    502 F.3d 61 (2d Cir. 2007) ....................................................................................7, 13

*Evans v. Ottimo,*
    469 F.3d 278 (2d Cir. 2006) ........................................................................7, 8, 9, 11

*F.D.I.C. v. Great Am. Ins. Co.,*
    607 F.3d 288 (2d Cir. 2010) .......................................................................................6

*Fujitsu Ltd. v. Fed. Express Corp.,*
    247 F.3d 423 (2d Cir. 2001) .......................................................................................6

*Grogan v. Garner,*
    498 U.S. 279 (1991) ...................................................................................................7

*Howard v. Gleason Corp.,*
    901 F.2d 1154 (2d Cir. 1986) .....................................................................................6

*IBM Corp. v. Liberty Mut. Fire Ins. Co.,*
    303 F.3d 419 (2d Cir. 2002) .......................................................................................5

*In re Anderson,*
    No. 8-10-70260-REG, 2011 WL 5417091 (Bankr. E.D.NY. Nov. 8, 2011) .........9, 13

*In re Baer*,
   161 B.R. 334 (Bankr. E.D.N.Y. 1993) ................................................................................ 9

*In re Hayes*,
   183 F.3d 162 (2d Cir. 1999) .............................................................................................. 10

*In re Inflight Newspapers, Inc.*,
   423 B.R. 6 (Bankr. E.D.N.Y. 2010) ................................................................................ 5, 6

*In re Nisivoccia*,
   502 B.R. 139 (Bankr. E.D.N.Y. 2013) ............................................................................... 9

*In re Nofer*,
   514 B.R. ............................................................................................................................ 13

*In re Nofer*,
   514 B.R. 346 (Bankr. E.D.N.Y. 2014) .......................................................................... 8, 10

*In re Overmyer*,
   52 B.R. 111 (Bankr. S.D.N.Y. 1985) ............................................................................... 11

*In re Perry H. Koplik & Sons, Inc.*,
   476 B.R. 746 (Bankr. S.D.N.Y. 2012) ............................................................................. 10

*In re Stone*,
   94 B.R. 298 (S.D.N.Y. 1988) ............................................................................................. 8

*Jeffreys v. Griffin*,
   1 N.Y.3d 34 (2003) ............................................................................................................. 7

*Kaufman v. Eli Lilly & Co.*,
   65 N.Y.2d 449 (1985) ..................................................................................................... 7, 8

*Leather v. Ten Eyck*,
   180 F.3d 420 (2d Cir.1999) ................................................................................................ 7

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
   470 U.S. 373 (1985) ........................................................................................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................................... 6

*Pearson Educ., Inc. v. Kumar*,
   721 F. Supp. 2d 166 (S.D.N.Y. 2010) ................................................................................ 6

*Pepper v. Litton*,
   308 U.S. 295 (1939) .......................................................................................................... 10

*Quarles v. Gen. Motors Corp.*,
   758 F.2d 839 (2d Cir. 1985) ................................................................................................ 5

*Sarasota CCM, Inc. v. Kuncman*,
   466 B.R. 590 (Bankr. E.D.N.Y. 2012) ................................................................................ 7

*Schiro v. Farley*,
   510 U.S. 222 (1994) ............................................................................................................ 7

*Zohlman v. Zoldan*,
   226 B.R. 767 (S.D.N.Y. 1998) .......................................................................................... 13

**STATUTES**

11 U.S.C. § 523 .................................................................................................................. passim

Fed. R. Bankr. P. 7056(a) ......................................................................................................... 1

Fed. R. Civ. P. 56 ............................................................................................................. 1, 5, 6

**OTHER AUTHORITIES**

Rule 7056-1 of the Local Rules ................................................................................................ 1

In accordance with the schedule set forth in the joint letter filed with this Court on June 17, 2015 (ECF No. 13), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, and Rule 7056-1 of the Local Rules for the United States Bankruptcy Court of the Southern District of New York, plaintiff Ian J. Currie, through his attorneys, Olshan Frome Wolosky LLP, hereby respectfully submits this memorandum of law in support of his motion for summary judgment on all of the claims against defendant-Debtor Roland G. Sanchez in the Complaint Objecting to Dischargeability pursuant to 11 U.S.C. § 523(a)(4), dated August 15, 2014 (the "Complaint").

## PRELIMINARY STATEMENT

1. In 2007, Ian Currie brought suit against the Debtor in New York State Supreme Court, New York County, asserting claims for fraud and breach of fiduciary duty in connection with the demise of Ceres Holding Group LLC ("Ceres"). Mr. Currie's core claim was that he was the victim of a fraudulent scheme, perpetrated by the Debtor Roland Sanchez, Ceres' CEO and sole Manager, to divert approximately $1.5 million of Ceres' funds to offshore accounts nominally held by Simon Glover, an associate of the Debtor who held a minority interest in Ceres. After a two day trial, in which the Debtor appeared, the State Court ruled that the Debtor, as well Mr. Glover, had engaged in a series of fraudulent acts and breaches of fiduciary duty, causing approximately $1.5 million in damages to Mr. Currie. After an award of pre-judgment interest and costs, the Court entered a judgment in the amount of $2,201,780.48 in favor of Mr. Currie. The vast majority of the judgment has not been satisfied.

2. Debtor is now collaterally estopped from re-litigating the facts and issues previously determined by the State Court, namely its finding that the Debtor defrauded Mr.

Currie and intentionally allowed Ceres' corporate funds to be diverted and unaccounted for. Because the Judgment was patently predicated on fraud and defalcation committed by the Debtor while in his fiduciary role, the Judgment is non-dischargeable under Section 523(a)(4) of the Bankruptcy Code. Indeed, Mr. Currie's claim is the archetype of a non-dischargeable claim. Debtor Sanchez was entrusted with a business enterprise worth several million dollars; he lied to its bank, to its principal (Mr. Currie) and to the Courts, and also falsified corporate and other records in order to loot the business. It would be a grave injustice for Debtor to receive a general discharge releasing him from these fraudulent acts.

## STATEMENT OF FACTS

3.  The following statement of facts is supported by Plaintiff's Statement of Uncontested Material Facts, the Declaration of Thomas J. Fleming, sworn to on July 10, 2015 (the "Fleming Decl.") and the exhibits thereto, specifically the Post-Trial Decision entered on April 12, 2012, in the underlying state action, *Currie v. Glover*, No. 602873/2007 (the "Underlying Action"), by the Honorable Barbara R. Kapnick, New York Supreme Court, New York County, which is attached to the Fleming Declaration as Exhibit A (the "Order").

**Ceres**

4.  Ceres was founded in 2003 by Mr. Currie and Debtor to engage in commodities trading of coffee and cocoa. (Order at 3, 5) Through an initial investment of approximately $1.25 million, Mr. Currie obtained a 55% equity interest in Ceres. (*Id*. at 3) Debtor, Ceres' Managing Member and Chief Executive Officer, "was responsible for managing the company's day-to-day operations." (*Id*. at 4)

5.  In or about November 2005, Debtor caused Ceres to open a new brokerage account. (Order at 6) Debtor entered into an agreement with a secondary investor in Ceres, Simon Glover, authorizing Glover "to make personal futures trades" using Ceres' capital out of

the new brokerage account. (*Id*.) Despite assuring Mr. Currie in April 2006 that Glover would cease using Ceres' account for personal trades, Debtor continued to permit Glover to do so. (Id. at 6-7) By November 30, 2006, Glover's losses amassed to $1.5 million. (*Id*. at 7) Debtor "failed to track the costs associated with Glover's trades, including the interest which accrued on the funds that Ceres barrowed to cover Glover's losses, and broker's fees." (*Id*.) Further, despite being inconsistent with Ceres' accounting practices, Debtor allowed Glover's losses to be recorded as "an 'accounts receivable' as of December 31, 2006" which made Ceres' financial position "appear[] unchanged despite obligations of over $1 million incurred by Ceres on Glover's behalf." (*Id*. at 7-8)

**2006 Action**

6. On November 8, 2006 Glover filed an action in New York State court to enjoin the relocation of Ceres' business to Europe (the "2006 Action"). (Order at 8) In the course of the 2006 Action, Debtor knowingly made numerous false statements under oath concerning the financial state of Ceres and also purposefully concealed other material facts. (*Id*. at 9-11) After preliminary injunction was issued "in the 2006 Action preventing Ceres from relocating to Europe," the parties entered into a settlement agreement (the "Settlement Agreement"). (*Id*. at 11) The Settlement Agreement provided that Mr. Currie was to receive a "liquidated value of his interest in Ceres at an amount to be determined by Ceres' outside auditors" to be paid in an immediate payment of $200,000 with the balance due at the conclusion of the audit. (*Id*. at 12) Prior to entering the Settlement Agreement, Debtor had provided sworn testimony that there was $3 million in equity in Ceres. (*Id*.) Additionally, despite Mr. Currie requesting information about the amount of Ceres' accounts receivable, Debtor never told Mr. Currie "that the definition of 'accounts receivables' he was using differed from the definition used in Ceres' audited financials." (*Id*. at 14)

3

**The Underlying Action**

7. Mr. Currie filed the Underlying Action against the Debtor and Glover on August 24, 2007 asserting that Debtor and Glover engaged in fraud, that the Settlement Agreement should be rescinded, and requesting that the Court order an accounting of Ceres' books. (Order at 2) After a two day bench trial, the Court rendered the Order finding that Debtor owed Mr. Currie a fiduciary duty, that Mr. Currie "presented significant evidence that [Debtor] materially misrepresented the true nature and amount of Glover's trading losses, both in the instant action and in statements made in connection with the [2006 Action]," these material misrepresentations "were knowingly made by [Debtor] with an intent to induce [Mr. Currie's] reliance," that Mr. Currie reasonably relied on the misrepresentations and was thereby damaged. (*Id*. at 20-23) Accordingly, the Court found that Debtor was liable for fraud, rescinded the Settlement Agreement, and ordered Debtor to account for Ceres' assets. (*Id*. at 23-24) The Court advised Debtor that if he failed to account for the assets entrusted to his case, it would enter judgment against him for Mr. Currie's losses.

8. On August 21, 2012, after Debtor failed to provide an accounting of Ceres' books, the Court issued a judgment of $1,472,620 plus prejudgment interest at a 9% per annum rate, $725,860.45, Currie's travel-related costs and other costs and disbursements for a total sum of $2,201,780.48 (the "Judgment"). (Fleming Decl. Ex. B)

**Adversary Proceeding**

9. On May 14, 2014, the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. In his Schedule F, filed May 28, 2014, Debtor listed the Plaintiff's claim of $2,201,780.48 as a "Judgment." Debtor's petition has since been converted to a Chapter 7 proceeding.

**ARGUMENT**

**I**

**THE STANDARD OF REVIEW**

10. Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). "Summary judgment is appropriate only if it can be established that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *IBM Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 423 (2d Cir. 2002) (*quoting* Fed. R. Civ. P. 56(c)); *see also In re Inflight Newspapers, Inc.,* 423 B.R. 6, 16 (Bankr. E.D.N.Y. 2010) (Grossman, J.) ("summary judgment is warranted only upon a showing by the movant that the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.") (citation omitted).

11. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original); *see also Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam). "A fact is material when a dispute over that fact would affect the outcome of the suit under the governing law, and the resolution of a fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Inflight*, 423 B.R. at 16.

12. "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact*.*" *F.D.I.C. v. Great Am. Ins. Co.,* 607 F.3d 288, 292 (2d Cir. 2010) (internal quotation marks omitted). Then, the opposing party "must come forward with specific

evidence demonstrating the existence of a genuine dispute of material fact." *Id*. Rule 56(e) requires that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 50 (1986). Accordingly, the party opposing summary judgment cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1986); *see also Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts … and may not rely on conclusory allegations or unsubstantiated speculation.") (citations omitted and internal quotation marks omitted); *Inflight*, 423 B.R. at 16 (same). Mere "[c]onclusory allegations" or "bald assertions" are insufficient to defeat a motion for summary judgment. *Pearson Educ., Inc. v. Kumar*, 721 F. Supp. 2d 166, 174 (S.D.N.Y. 2010). Thus, the Debtor "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot defeat a motion for summary judgment with "unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

## II

### THE STATE COURT'S ORDER IS ENTITLED TO COLLATERAL ESTOPPEL

13. Under basic principles of issue preclusion, the findings of fact in the Order are binding on the Debtor. Put another way, there is no basis for litigating this matter a second time.

14. "[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Ten Eyck,* 180 F.3d 420, 424 (2d Cir.1999) (*quoting Schiro v. Farley*, 510 U.S. 222, 232 (1994)). It is well established that the doctrine of

collateral estoppel applies to dischargeability proceedings under Section 523(a) of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991); *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). "In determining the preclusive effect of a state court judgment in a subsequent federal lawsuit, federal courts are guided by the full faith and credit statute, which directs courts to refer to the preclusion law of the State in which judgment was rendered." *Sarasota CCM, Inc. v. Kuncman*, 466 B.R. 590, 593 (Bankr. E.D.N.Y. 2012) (*citing Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985)); *Evans,* 469 F.3d at 281. Thus, because the Order was rendered by a New York court, New York preclusion law applies.

15. "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans,* 469 F.3d at 281 (*citing Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455-56 (1985)). However, "collateral estoppel is a flexible doctrine and whether to apply it a particular case depends on 'general notions of fairness involving a practical inquiry into the realities of the litigation.'" *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65-66 (2d Cir. 2007) (*quoting Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 (2003)), *cert. denied*, 555 U.S. 1097 (2009)).

16. "Generally, under New York law, 'collateral estoppel effect will only be given to matters actually litigated and determined in a prior action,' because '[i]f an issue has not been litigated, there is no identity of issues." *Evans*, 469 F.3d at 282 (*quoting Kaufman,* 65 N.Y.2d at 456). "'[F]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually

7

determined in the prior proceeding.'" *Id*. (*quoting D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.,* 76 N.Y.2d 659, 667 (1990)).

17. In holding the Judgment to be nondischargeable under Section 523(a)(4), this Court will have to find that the Debtor committed a fraud or defalcation while acting as a fiduciary to Mr. Currie. *See In re Nofer*, 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014). The core claims in the Underlying Action were for fraud and an accounting. (Order at 2) The Second Circuit in *Evans* expressly held that elements of a fraud claim under New York law were identical to a fraud claim under Section 523(a)(4). *Id*. at 283 (noting also that "[f]raud was also proven to a higher burden in the state court action than would be required to show nondischargeability in bankruptcy court"). Further, in order to establish that Mr. Currie was entitled to an accounting, the State Court necessarily must have found "the existence of a confidential or fiduciary relationship" and "a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Adam v. Cutner & Rathkopf*, 238 A.D.2d 234, 241 (1st Dep't 1997); *see also In re Stone*, 94 B.R. 298 (S.D.N.Y. 1988) (holding that the debtor was collaterally estopped from contesting dischargeability of a debt to a former partner by a state court determination that the debtor had breached fiduciary duties by misappropriating partnership assets), *aff'd*, 880 F.2d 1318 (2d Cir. 1989). The issues litigated in the Underlying Action are thus identical to those in the present suit.

18. It is equally clear that the Debtor had a full and fair opportunity to litigate the pertinent issues in the Underlying Action. The Second Circuit in *Evans* held that a party had a "full and fair opportunity to litigate" where he was properly served in the prior action and "afforded the opportunity to contest" the allegations, regardless of whether he actually responded or not. 469 F.3d at 282. Not only was the Debtor properly served in the Underlying Action, he

8

actively participated in the case from 2007 through 2012, when he appeared at the two day trial and testified on his own behalf. (Order at 2-3, 11, 13, 18) Thus, the Debtor undeniably had a full and fair opportunity to litigate the facts and issues decided by the Order. *See In re Nisivoccia*, 502 B.R. 139, 154 (Bankr. E.D.N.Y. 2013) (finding that Debtor had a full and fair opportunity for trial of the issues where he was "served with the motion in State Court and filed an answer"); *In re Baer*, 161 B.R. 334, 337 (Bankr. E.D.N.Y. 1993).

19. Based on the foregoing, the State Court's Order collaterally estops the Debtor from relitigating the underlying facts in the present suit and Debtor is bound by the State Court's determinations contained therein.

### III

### THE JUDGMENT IS NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(4)

20. "Despite the applicability of the doctrine of collateral estoppel, the Bankruptcy Court is the sole authority to determine whether Plaintiffs' claim against the Debtor is non-dischargeable under § 523(a). . . . In other words, [this Court] must be able to identify clear and specific findings in the pre-petition judgment which correlate to, and are decisive as to, the elements to be proven in the § 523(a) cause of action." *In re Anderson*, No. 8-10-70260-REG, 2011 WL 5417091, at *7 (Bankr. E.D.NY. Nov. 8, 2011). Because the facts as decided in the Order and Judgment readily satisfy each element of a claim under Bankruptcy Code Section 523(a)(4), the Judgment must be found to be non-dischargeable.

21. Section 523(a)(4) provides that, "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." 11 U.S.C.A. § 523(a)(4) (West 2010). Accordingly, for the Judgment to be non-dischargeable under Section 523(a)(4) two elements must be met: (1) the Debtor must have been a fiduciary to

9

Mr. Currie; and (2) the debt must have been caused by fraud or defalcation committed by the Debtor in the course of that relationship. *See, e.g.*, *In re Nofer*, 514 B.R. at 353. Both elements were clearly and specifically determined in the Underlying Action.

22. First, the State Court in the Underlying Action expressly determined that there was a fiduciary relationship between the Debtor and Mr. Currie. "A fiduciary relationship may arise where power and knowledge within a corporation are concentrated in one individual. . . . Corporate officers and directors are likewise fiduciaries." *Id*. at 354 (*citing Pepper v. Litton,* 308 U.S. 295, 306 (1939)); *In re Hayes*, 183 F.3d 162, 168 (2d Cir. 1999) ("Moreover, numerous cases have applied the defalcation exception to debts owed by corporate officers, notwithstanding the absence of any express trust."). This rule also extends to closely held companies, like Ceres. *In re Perry H. Koplik & Sons, Inc.*, 476 B.R. 746, 797 (Bankr. S.D.N.Y. 2012), *adopted in relevant part*, 499 B.R. 276 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 43 (2d Cir. 2014). In *In re Nofer*, the court held that the "Plaintiff sufficiently pleaded that the Debtor acted in a fiduciary capacity" for the purposes of Section 523(a)(4) where the Debtor "dominated [the company's] operations and controlled its finances" in a way that "excluded the Plaintiff from exercising any managerial oversight and prevented the Plaintiff from viewing Viking's books and records." 514 B.R. at 354. The same is true here.

23. The Debtor was the CEO and sole Managing Member of Ceres, and thus, owed fiduciary duties to Mr. Currie, the majority shareholder. (Order at 4) In the Order, the court stated that: "This Court has already concluded in its July 30, 2010 decision on defendants' motion for summary judgment, that [Debtor] owed [Mr. Currie] a fiduciary duty due to [Debtor's] day-to-day involvement in the business of Ceres and his superior knowledge regarding Glover's trading losses." (*Id*. at 22) In fact, the court found that "on the occasions

10

when [Mr. Currie] requested details directly from [the Debtor] regarding Ceres' business, [the Debtor] provided him with incomplete, false or misleading information." (*Id*. at 13-15, 21-22) The court then granted Mr. Currie an accounting — to which the existence of a fiduciary duty is a necessary element — and as a result, the Court concluded that the Debtor had personal liability for approximately $1.5 million in missing Ceres assets. (*Id*. at 24; Fleming Decl. Ex. B) Thus, the first element of Section 523(a)(4) has been clearly established. *See In re Overmyer*, 52 B.R. 111, 117 (Bankr. S.D.N.Y. 1985).

24. Mr. Currie must next show that the Debtor committed either a fraud *or* a defalcation. The Order and Judgment expressly establish that the Debtor here committed both.

25. First, the Order clearly and specifically holds that the Debtor committed fraud while managing Ceres. "The liability of corporate officers and directors to the corporation is not dischargeable when bottomed on fiduciary fraud." *In re Overmyer*, 52 B.R. at 118. The elements for fraud under Section 523(a) are identical to those under New York law. *Evans,* 469 F.3d at 283. Having successfully proven fraud under the heightened evidentiary standard in the Underlying Action, the Judgment clearly falls within Section 523(a)(4).

26. The State Court in the Underlying Action made specific findings that Sanchez *knowingly* made repeated misrepresentations with an *intent* to deceive Mr. Currie and induce his reliance, upon which Mr. Currie reasonably relied and was damaged. The court ruled:

> [P]laintiff [Currie] has met his burden of showing that defendant made a material misrepresentation of fact with knowledge of its falsity and with the intent to induce plaintiff's reliance thereon.

(Order at 21) Specifically, the fraudulent scheme implemented by Mr. Sanchez relied upon false entries in Ceres' books that disguised the diversion of funds to Mr. Glover as "accounts receivable." The Court summarized the fraud as follows:

11

> Plaintiff has presented significant evidence that defendant [Sanchez] materially misrepresented the true nature and amount of Glover's trading losses, . . . Plaintiff has also shown that these material misrepresentations were knowingly made by defendant with an intent to induce plaintiff's reliance. Most notably, defendant reported Glover's trading losses as an accounts receivable despite the fact that it did not fall within the definition of "accounts receivable" contained in Ceres' audited financials. In addition, defendant provided an affidavit and in-court testimony in the 2006 Action, as well as the sworn Soc Gen compliance certificates, attesting to the fact that Ceres had at least $3 million in equity when defendant knew this not to be true. Further, when, during the course of the 2006 Action, plaintiff inquired regarding "the level of Futures Bought/Sold, who the futures are held with, and the full details of any open positions of Glover," defendant responded that the account was "down $18,926.33" without mentioning Glover had suffered more than $1 million in losses.

(Order at 22) The State Court concluded that Mr. Sanchez's fraud permeated a buyout agreement executed by Currie in early 2007. The State Court rescinded the buyout agreement and directed Mr. Sanchez to account for the assets entrusted to him as CEO of Ceres. When Mr. Sanchez could not do so, the Court awarded damages to Mr. Currie.

27. Further, even if the Judgment did not fall under the "fraud" prong of Section 523(a)(4), which it evidently does, the Debtor also committed a fiduciary defalcation. In 2013, the Supreme Court defined fiduciary defalcation under Section 523(a)(4) as a "nonfraudulent breach[] of fiduciary duty" to which the fiduciary had "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1757, 1769 (2013). The Court explained that "gross recklessness" occurs when "the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*. at 1759-60

(internal quotations and citations omitted). Classically, this definition includes a "misappropriation or failure to account . . . ." *In re Anderson*, No. 8-10-70260-REG, 2011 WL 5417091, at *11 (Bankr. E.D.N.Y. Nov. 8, 2011) (*citing In re Hyman*, 502 F.3d at 68). "The phrase 'failure to account for' property has been interpreted to mean that property is missing or the fiduciary has failed to pay it over as he is supposed to." *Id*. (*citing Zohlman v. Zoldan*, 226 B.R. 767, 777 n.8 (S.D.N.Y. 1998)).

28. The Debtor first committed a defalcation when he intentionally, or at a bare minimum with conscious disregard or willful blindness, took Ceres funds and delivered them to Mr. Glover, for no corporate benefit — all the while falsifying corporate records and committing perjury to cover his tracks. *See In re Nofer*, 514 B.R. at 256. Then, the Debtor here was found to have breached a fiduciary duty owed to Mr. Currie and ordered by the State Court to account "for all of the funds diverted from Ceres" by the Debtor and his associates. (Order at 24) Despite having notice of the Order, the Debtor failed to return the misappropriated corporate funds, and due to Debtor's non-compliance, the State Court issued the Judgment. For the foregoing reasons, the Judgment is without a doubt based on a defalcation by the Debtor.

29. Thus, the underlying debt — the Judgment — is non-dischargeable under Section 523(a)(4) because it was clearly caused by fraud and defalcation committed by the Debtor while acting as a fiduciary to Mr. Currie.

# CONCLUSION

30. WHEREFORE, for all of the foregoing reasons, Mr. Currie respectfully requests that this Court award it summary judgment in its favor on the claims against Defendant-Debtor, finding the Judgment to be non-dischargeable, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 10, 2015

*/s/ Thomas J. Fleming*
Thomas J. Fleming, Esq.
OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022