**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:                                                                                      Case No. 14-22667 (SHL)

ROLANDO G. SANCHEZ,                                                      Chapter 7

                      Debtor.
------------------------------------------------------------------x
IAN J. CURRIE,                                                                       Adv. No. 14-08252 (SHL)

                      Plaintiff,
       v.

ROLANDO G. SANCHEZ,

                      Defendant.
------------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

OLSHAN FROME WOLOSKY LLP
*Counsel for Plaintiff*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
By:    Thomas J. Fleming, Esq.

REICH, REICH & REICH, P.C.
*Counsel for Defendant*
235 Main Street, Suite 450
White Plains, New York 10601
By:    Jeffrey A. Reich, Esq.
         Nicholas A. Pasalides, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

        Before the Court is a motion for summary judgment filed by the plaintiff, Ian J. Currie (the "Plaintiff") in the above-captioned adversary proceeding (the "Motion") [ECF No. 16].[1]

---

[1] Unless otherwise specified, all references to the Case Management/Electronic Case Filing ("ECF") docket are to this adversary proceeding.

The Plaintiff argues that a debt owed to him by the debtor, Roland G. Sanchez (the "Defendant" or the "Debtor") arose from fraud or defalcation while acting in a fiduciary capacity and thus should be excepted from discharge under 11 U.S.C. § 523(a)(4). *See* Compl. ¶ 18 [ECF No. 1]. The Plaintiff contends that all the elements of Section 523(a)(4) have already been established in a prior state court proceeding and that collateral estoppel bars the Defendant from re-litigating the facts and issues previously determined by the Supreme Court of the State of New York, County of New York (the "State Court"). *See* Motion ¶ 2. The Defendant opposes the Motion, arguing that collateral estoppel does not apply because the issues here are different than those in the State Court action and that the State Court judgment was not the direct result of the State Court's finding of fraud. *See* Def.'s Opposition to the Motion ("Def.'s Opposition") ¶ 4 [ECF No. 17]. For the reasons set forth below, the Court grants the Plaintiff's Motion and concludes that the Plaintiff's debt is excepted from discharge.

## **BACKGROUND**[2]

In 2003, the Plaintiff and the Defendant founded Ceres Holding Group LLC ("Ceres") to engage in commodities trading of coffee and cocoa. *See* Def.'s 7056-1 Stmt. ¶ 1; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 1; *see also* Post-Trial Decision at 3–4. The Plaintiff made an initial

---

[2]  The factual background here is based largely on facts from the State Court's findings in a post-trial decision entered on April 12, 2012, which is entitled to full faith and credit in this Court (the "Post-Trial Decision"). *See* Post-Trial Decision, attached as Exh. 3 to the Def.'s Opposition [ECF No. 17-3]; *see also Denton v. Hyman* (*In re Hyman*), 320 B.R. 493, 496, 498 (Bankr. S.D.N.Y. 2005) (according state surrogate court's judgment full faith and credit in subsequent non-dischargeability action); *Hydrogrowers Inc. v. Anderson* (*In re Anderson*), 2011 WL 5417091, at *6 (Bankr. E.D.N.Y. Nov. 8, 2011) (concluding the court was bound to accept state court's determination of debt amount where there was no allegation that the judgment was obtained by extrinsic fraud or collusion); 28 U.S.C. § 1738 (The Full Faith and Credit Act provides that state judicial proceedings, "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such [s]tate . . . from which they are taken."). Other background facts are undisputed based on the parties' statements of material facts submitted in connection with this Motion. The Plaintiff filed a statement of material facts pursuant to Local Rule 7056–1 on July 10, 2015. *See* Pl.'s Local Rule 7056-1 Statement ("Pl.'s 7056-1 Stmt.") [ECF No. 15-1]. The Defendant responded to the Plaintiff's statement on August 25, 2015. *See* Def.'s Response to Pl.'s 7056-1 Stmt. [ECF No. 17-7]. The Defendant also filed his own statement of material facts ("Def.'s 7056-1 Stmt.") [ECF No. 17-6], to which the Plaintiff responded ("Pl.'s Response to Def.'s 7056-1 Stmt.") [ECF No. 21-1].

2

investment of approximately $1.25 million, giving him an approximately 55% interest in Ceres. Post-Trial Decision at 3. A third party, Simon Glover, held an approximately 35% interest in Ceres. *Id*. The Plaintiff and Mr. Glover held their approximately 91% interest in Ceres through Dundee, a company in which they held complete ownership. *See id.* n.2; *see also* Def.'s 7056-1 Stmt. ¶ 1; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 1. The Defendant held a 1% interest in Ceres. *See* Post-Trial Decision at 3. The Defendant was the Managing Member and Chief Executive Officer of Ceres and was responsible for the company's day-to-day operations. *Id*. at 4. The Plaintiff resides in Monaco and was not involved in the day-to-day operations of Ceres. *Id*.

In addition to trading in coffee and cocoa commodities, Ceres traded in commodities futures. *Id*. To that end, Ceres maintained a brokerage account with the brokerage firm FIMAT. *Id*. In or about November 2005, another brokerage account was opened in Ceres' name that was used exclusively by Mr. Glover to make personal trades (the "Glover Account"). *See id.* at 6; *see also* Def.'s 7056-1 Stmt. ¶ 2; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 2. The Plaintiff learned of Mr. Glover's personal trading on the Glover Account in April 2006 and asked him to liquidate his personal trading positions in the account. Def.'s 7056-1 Stmt. ¶ 2; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 2. Despite the Plaintiff's request, Mr. Glover continued to make personal trades in the account. Def.'s 7056-1 Stmt. ¶ 2; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 2. By November 30, 2006, Mr. Glover's losses in the account reached approximately $1.5 million. *See* Post-Trial Decision at 7. These losses were re-characterized as accounts receivable on Ceres' financial statements. *Id*. The Plaintiff was not informed of this re-characterization. *See id.* at 10.

In or about May 2006, the Plaintiff suggested to the Defendant and Mr. Glover that Ceres should relocate its operations from New York to Europe in order to save costs. *Id*. at 8. In

3

response, Mr. Glover filed an action in state court seeking to enjoin the relocation of Ceres' business to Europe. *Id.*; *see also* Def.'s 7056 Stmt. ¶ 3; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 3. The state court issued the requested preliminary injunction. *See* Post-Trial Decision at 11; *see also* Def.'s 7056-1 Stmt. ¶ 4; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 4. Shortly thereafter, Mr. Glover, the Plaintiff, and the Defendant entered into a settlement agreement (the "Settlement Agreement"). Def.'s 7056-1 Stmt. ¶ 5; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 5; *see also* Post-Trial Decision at 11–12. Under the Settlement Agreement, the Plaintiff was to receive $200,000 at closing and an amount equal to his equity ownership in Ceres as of February 28, 2007, as determined by Ceres' outside auditors, Bederson & Company LLP. *See* Def.'s 7056-1 Stmt. ¶ 6; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 6; Settlement Agreement ¶ 5, attached as Exh. 2 to the Def.'s Opposition [ECF No. 17-2]. The Settlement Agreement also required creating escrow accounts to be used to discharge the existing obligations of Ceres. *See* Def.'s 7056-1 Stmt. ¶ 6; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 6; *see also* Settlement Agreement ¶ 8. Based on various sworn statements by the Defendant and Mr. Glover, the Plaintiff understood that prior to executing the Settlement Agreement, there was approximately $3 million in equity in Ceres. *See* Post-Trial Decision at 12. In fact, Ceres did not have the money to fund the escrow accounts and the Plaintiff received nothing under the Settlement Agreement but for the $200,000 at the closing. *See* Post-Trial Decision at 12–13.

In August 2007, the Plaintiff filed the State Court action against the Defendant and Mr. Glover, among others, asserting claims for, *inter alia*, breach of contract, rescission/fraud, and an accounting. *See* State Court Compl. ¶¶ 26, 28, 29, 42, attached as Exh. 1 to Def.'s Opposition [ECF No. 17-1]. The Plaintiff alleged that based on the misrepresentations of the Defendant and Mr. Glover, he was fraudulently induced into entering the Settlement Agreement and as a result

4

suffered damages exceeding $1.5 million. *Id.* ¶¶ 26, 28, 33, 37, 40. The State Court held a trial in June 2011, at which the Defendant appeared *pro se*. *See* Post-Trial Decision at 3. The State Court found that the Defendant committed fraud and granted the Plaintiff's request to rescind the Settlement Agreement. *See id.* at 23. More specifically, the State Court concluded that the Defendant knowingly and with an intent to induce the Plaintiff's reliance, "materially misrepresented the true nature and amount of Glover's trading losses, both in the instant action and in statements made in connection with the preliminary injunction hearing in the 2006 Action." *Id.* at 20. Additionally, the State Court found that the Defendant led the Plaintiff to believe that Ceres had sufficient capital to, and would, fund the escrow accounts contemplated in the Settlement Agreement. *Id.* at 21. The State Court also granted the Plaintiff's request for an accounting. *Id.* at 24.

The State Court entered an order (the "Order") rescinding the Settlement Agreement and directing the Defendant to "serve and file his accounting, under oath, of all funds received and distributed by Ceres Commodities Group LLC and/or Ceres Holding Group LLC . . . from January 1, 2005 through the present, including all funds distributed to, or for the benefit of, Simon Glover or SRIO Foundation . . . ." Order at 2, attached as Exh. 4 to Def.'s Opposition [ECF No. 17-4]. The Order further stated that if the Defendant did not timely submit his accounting, the "[P]laintiff shall be entitled to entry of judgment against [D]efendant Roland Sanchez in the amount of $1,472,620 plus interest at the rate of 9% per annum from March 2, 2007, to the date of entry of judgment, plus $2,165.03 to cover travel related out of pocket expenses . . . ." *Id.*

The Defendant never submitted an accounting. *See* Def.'s 7056-1 Stmt. ¶ 11; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 11. On August 21, 2012, a judgment was entered in the

5

amount of $1,472,620 plus interest at 9% per annum from March 2, 2007, to the date of entry of judgment for a total of $725,860.45, plus $2,165.03 to cover travel related out of pocket expenses, plus costs and disbursements of $1,135.00, for a total sum of $2,201,780.48 (the "Judgment"). *See* Judgment at 2, attached as Exh. 5 to Def.'s Opposition [ECF No. 17-5].

On May 14, 2014, the Defendant filed a voluntary Chapter 11 petition in this Court. [Case No. 14-22667, ECF No. 1]. The Plaintiff's claim of $2,201,780.48 was listed as a "Judgment" on the Debtor's schedules. *See* Schedule F [Case No. 14-22667, ECF No. 10]. The Defendant's bankruptcy proceeding was converted to Chapter 7 in May 2015. [Case No. 14-22667, ECF No. 55].[3] The Plaintiff filed this adversary proceeding contesting the dischargeability of the Judgment under 11 U.S.C. § 523(a)(4). *See* Compl. ¶ 18.

The crux of the parties' dispute is the legal effect of the State Court's proceedings. On the one hand, the Plaintiff argues that the doctrine of collateral estoppel bars the Debtor from relitigating the State Court's conclusion that the Debtor committed fraud, and that the State Court's findings establish that the Debtor committed fraud and defalcation while in a fiduciary capacity. *See* Motion ¶ 2. On the other hand, the Defendant argues that the Judgment arises from a default on the accounting claim, not the findings of fraud, and that collateral estoppel does not apply because the issues to be litigated here differ from those decided by the State Court. *See* Def.'s Opposition ¶ 4.

## DISCUSSION

Federal Rule of Civil Procedure 56, made applicable to this case under Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the

---

[3] In July 2015, the Plaintiff filed a proof of claim in the Chapter 7 proceeding for $2,478,868.53, representing the Judgment and pre-petition interest less disbursements from the Defendant's estate. *See* Proof of Claim, attached as Exh. 5 to the Motion [ECF No. 15-5].

6

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [movant] is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate that there is no genuine issue of material fact. *See Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir. 1996).  The burden then shifts to the non-moving party to produce "sufficient specific facts to establish that there is a genuine issue of material fact for trial." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) (citation omitted).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  In sum, if the Court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1969)).

### A. Collateral Estoppel

It is well-established that the doctrine of collateral estoppel applies in non-dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991); *In re Hyman*, 320 B.R. at 499 ("There is no doubt that the doctrine of collateral estoppel applies in bankruptcy proceedings generally and in [non-dischargeability] proceedings arising under Section 523(a) of the Bankruptcy Code in particular."). Under the doctrine, "once an issue is determined by a court of competent jurisdiction, that determination is conclusive in subsequent litigation based on

a different cause of action involving a party to the prior suit." *Perino v. Cohen* (*In re Cohen*), 92 B.R. 54, 59 (Bankr. S.D.N.Y. 1988). "Collateral estoppel treats as final 'only those issues actually and necessarily decided in a prior suit.'" *Id.* (quoting *In re Kaufman*, 85 B.R. 706, 709 (Bankr. S.D.N.Y. 1988)). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol* (*In re Sokol*), 113 F.3d 303, 306 (2d Cir. 1997)); *see also Blue Dog at 399 Inc. v. BP 399 Park Ave. LLC* (*In re Blue Dog at 399 Inc.*), 540 B.R. 67, 76 (Bankr. S.D.N.Y. 2015) ("Bankruptcy courts apply the preclusion law of the state in which they sit."). Under New York law, "collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). Generally, to satisfy the identity requirement the question "must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Id.* at 282 (citation omitted). "The party asserting collateral estoppel bears the burden of demonstrating that it is entitled to this relief." *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 93 (2d Cir. 2005) (citation omitted). The doctrine of collateral estoppel "must be applied with the utmost caution." *Indo-Med Commodities v. Wisell* (*In re Wisell*), 494 B.R. 23, 34 (Bankr. E.D.N.Y. 2011).

### B. Non-dischargeability Under Section 523(a)(4)

The party seeking to except a debt from discharge under Section 523(a) "must prove each element by a 'preponderance of the evidence.'" *Race Place of Danbury, Inc. v. Scheller* (*In re Scheller*), 265 B.R. 39, 51 (Bankr. S.D.N.Y. 2001) (citing *Grogan*, 498 U.S. at 285); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). Excepting a debt from discharge can

8

have severe consequences for a debtor and thus, "exceptions to discharge are to be narrowly construed and genuine doubts should be resolved in favor of the debtor." *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 66 (2d Cir. 2007).

The Plaintiff here invokes Section 523(a)(4), which excepts from discharge a debt for "fraud or defalcation while acting in a fiduciary capacity . . . ." 11 U.S.C. § 523(a)(4). "To sustain a cause of action for fraud or defalcation under [Section] 523(a)(4), the plaintiff must first establish that the debtor acted while in a fiduciary capacity." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998). "The mere *existence* of a fiduciary relationship is not sufficient to deny dischargeability under Section 523(a)(4)." *Zohlman v. Zoldan* (*In re Zoldan*), 221 B.R. 79, 87 (Bankr. S.D.N.Y. 1998). Rather, the court must find that the defendant "was '*acting* in a fiduciary capacity' with respect to the particular conduct giving rise to the liability which is claimed to be non-dischargeable." *Id.* The meaning of fiduciary is a matter of federal law and the term "fiduciary capacity" is narrowly construed. *See Zohlman*, 226 B.R. at 772; *see also Sandak v. Dobrayel* (*In re Dobrayel*), 287 B.R. 3, 14 (Bankr. S.D.N.Y. 2002) ("The meaning of 'fiduciary capacity' under Federal laws is more restricted than under the more general common law or state definitions.").

Under Section 523(a)(4), the term fiduciary capacity "may be an express trust, technical trust, or statutorily imposed trust." *Mirarchi v. Nofer* (*In re Nofer*), 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014). "[T]he fiduciary relationship must exist prior to the act creating the debt; a trust relationship cannot be said to arise merely from the wrongful conduct itself." *Zohlman*, 226 B.R. at 773; *see also In re Scheller*, 265 B.R. at 52. Bankruptcy courts "may look to state law to determine whether a trust exists." *Chitester v. Watterson* (*In re Watterson*), 524 B.R. 445, 451 (Bankr. E.D.N.Y. 2015). Under New York law, a fiduciary relationship "may arise where power

9

and knowledge within a corporation are concentrated in one individual. Majority shareholders who dominate the corporation's affairs are fiduciaries, and their powers are held in trust for the benefit of minority shareholders. Corporate officers and directors are likewise fiduciaries." *In re Nofer*, 514 B.R. at 354 (citing cases).

If the debtor was acting in a fiduciary capacity, courts then examine whether the acts undertaken constitute fraud or defalcation under Section 523(a)(4). *See Zohlman*, 226 B.R. at 775. The Bankruptcy Code "incorporates the common law elements of fraud, 'includ[ing] a false representation, scienter, reliance, and harm.'" *In re Nofer*, 514 B.R. at 355 (quoting *Evans*, 469 F.3d at 283). Under Section 523(a)(4), fraud requires "intentional deceit, and is thus akin to actual fraud." *Id.* (citing *Evans*, 469 F.3d at 283; *G.W. White & Son, Inc. v. Tripp* (*In re Tripp*), 189 B.R. 29, 35 (Bankr. N.D.N.Y. 1995)). Defalcation has been defined as a "misappropriation or failure to account" and "requires a showing of conscious misbehavior or extreme recklessness." *In re Hyman*, 502 F.3d at 68. "Mere negligence, without some element of intentional wrongdoing, breach of fiduciary duty or other identifiable misconduct, does not constitute a 'defalcation' within the meaning of section 523(a)(4)." *In re Scheller*, 265 B.R. at 53 (citation omitted). Yet, a defalcation "need not rise to the level of fraud, embezzlement, or misappropriation." *Id.* The Supreme Court has held that defalcation requires "a culpable state of mind" and "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1757, 1759 (2013).

### C. The State Court Judgment is Entitled to Preclusive Effect

Applying all these legal principles here, the Court concludes that the Plaintiff has satisfied the elements of collateral estoppel, and that the State Court's findings establish the

elements necessary to establish that the Defendant committed "fraud or defalcation while acting in a fiduciary capacity" under Section 523(a)(4).

As a preliminary matter, the Court rejects the Defendant's argument that collateral estoppel does not apply because the legal issues here "arise under the Bankruptcy Code and are not identical to those decided by the State Court." Def.'s Opposition ¶ 19. It is well-settled that collateral estoppel applies in bankruptcy proceedings. *See In re Hyman*, 320 B.R. at 499 (stating there is "no doubt" that collateral estoppel applies in bankruptcy proceedings, particularly those arising under Section 523(a)).

Turning to the elements of collateral estoppel, the Court finds that the issues presently before the Court as to non-dischargeability are identical to the issues necessarily decided by the State Court. *See Evans*, 469 F.3d at 281. The elements of fraud under Section 523(a)(4) incorporate "general common law of torts and likewise include a false representation, scienter, reliance, and harm." *Id.* at 283. Section 523(a)(4) additionally requires that the fraud be committed "while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). The State Court found that the Plaintiff established his fraud claim. *See* Post-Trial Decision at 20–23. More specifically, the State Court found that the Defendant made the following misrepresentations to the Plaintiff:

> report[ing] Glover's trading losses as an accounts receivable despite the fact that it did not fall within the definition of 'accounts receivable' contained in Ceres' audited financials. In addition . . . provid[ing] an affidavit and in-court testimony in the 2006 Action, as well as the sworn Soc Gen compliance certificates, attesting to the fact that Ceres had at least $3 million in equity when defendant knew this not to be true. Further, when, during the course of the 2006 Action, plaintiff inquired regarding 'the level of Futures Bought/Sold, who the futures are held with, and the full details of any open positions of Glover,' defendant responded that the account was 'down $18,926.33' without mentioning Glover had suffered more than $1 million in losses. Moreover, . . . [leading] plaintiff to believe that Ceres had sufficient capital to, and would, fund the escrow accounts.

11

*Id.* at 20–21.  The State Court further found that when the Plaintiff requested details of Ceres' financial condition, the Defendant "provided him with incomplete, false or misleading information."  *Id.* at 21–22.  Given these factual findings, it is clear that the State Court found a fraud under New York law, which requires "a material misrepresentation of an existing fact, made with knowledge of its falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and damages."  *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 233 (App. Div. 1st Dep't 2011).  Given these findings, the Court rejects the Defendant's contention that there are no State Court findings "that Sanchez committed any intentional wrongdoing or had the requisite state of mind to constitute defalcation within the ambit of 11 U.S.C. § 523(a)(4)."  *See* Def.'s Opposition ¶ 26.

The State Court also found that a fiduciary relationship existed between the Defendant and the Plaintiff.  *See* Post-Trial Decision at 20–23 (finding the Defendant "owed [P]laintiff a fiduciary duty due to [D]efendant's day-to-day involvement in the business of Ceres and his superior knowledge regarding Glover's trading losses."); *id.* at 22 (rejecting the Defendant's argument that it was "not his responsibility to point out to [P]laintiff the true extent of Glover's trading losses.").  While the State Court did not explicitly state that the Defendant committed the fraud while acting as a fiduciary, there was no other capacity in which the Defendant could have been acting in when he committed the fraud.  *See Zohlman*, 226 at 772–73.

The absence of a technical or express trust here does not preclude the finding that a fiduciary relationship existed under Section 523(a)(4).  *See Andy Warhol Found. for Visual Arts, Inc. v. Hayes* (*In re Hayes*), 183 F.3d 162, 168 (2d Cir. 1999) (stating "numerous cases have applied the defalcation exception to debts owed by corporate officers, notwithstanding the absence of any express trust." (citing cases)).  The Defendant was the Managing Member and

12

CEO of Ceres and was responsible for day-to-day operations. *See* Post-Trial Decision at 3–4. As a corporate officer, the Defendant was a fiduciary and owed a duty to the Plaintiff under the more narrow definition of fiduciary applicable in the Section 523(a)(4) context. *See In re Nofer*, 514 B.R. at 354 ("Corporate officers and directors are likewise fiduciaries."); *Pokoik v. Pokoik*, 982 N.Y.S.2d 67, 70 (App. Div. 1st Dep't 2014) (stating managing member of an LLC owes a fiduciary duty to non-managing member); *cf. Fox v. Koplik* (*In re Perry H. Koplik & Sons, Inc.*), 476 B.R. 746, 797–98 (Bankr. S.D.N.Y. 2012) (concluding under New York law the duties of care and loyalty apply to closely held corporations and citing cases); *O'Connel v. Shallo* (*In re Die Fliedermaus LLC*), 323 B.R. 101, 110 (Bankr. S.D.N.Y. 2005) (stating fiduciary standard that applies to a corporate director applies to managing member of a limited liability company) (citing N.Y. Ltd. Liab. Co. L. § 409).

As to the first prong of collateral estoppel, the Defendant raises several arguments. The Defendant contends that the Judgment is predicated on the failure to account and not the State Court's finding of fraud. *See* Def.'s Opposition ¶¶ 9, 11, 27–28. As the State Court did not find any misconduct as to the accounting claim, the Defendant thus concludes that the defalcation standard under Section 523(a)(4) is not satisfied. *Id.* ¶¶ 9, 26–28, 31. The Defendant further argues that the Judgment is not entitled to preclusive effect because the issue of damages was not heard or decided by the State Court. *See* Def.'s Reply to Pl.'s Suppl. Memorandum of Law ¶¶ 3, 5 [ECF No. 28]; *see also* Def.'s Opposition ¶ 31.

The Court rejects these arguments. The Defendant's arguments relate to whether the State Court's award of damages was based on its findings of fraud. In fact, the State Court made numerous findings of fact that correspond to the amount of damages awarded. For example, the State Court found that: the Plaintiff made an initial investment of $1.25 million in Ceres and had

13

an approximately 55% interest therein, *see* Post-Trial Decision at 3; under the terms of the Settlement Agreement, the Plaintiff was to receive a $200,000 initial payment with the balance of his equity to be paid after an audit concluded, *see id.* at 11–12; the Defendant represented in various sworn statements that there was $3 million of equity in Ceres, *see id.* at 12; the Plaintiff received an e-mail from the auditors indicating there was $3 million in shareholder equity in Ceres, *see id.* at 14; and the Plaintiff only received the initial $200,000 payment, and thus suffered a loss of over $1 million, *see id.* at 13, 23. Based on these findings, the State Court concluded that the Plaintiff would be entitled to a judgment against the Defendant in the amount reflected in the Plaintiff's post-trial brief, unless the Defendant provided an accounting. *See* Order at 2. In that post-trial brief, the Plaintiff alleged that rescissory damages were warranted in the amount of $1,472,620, representing the Plaintiff's 55.754% share in the $3 million Ceres business, minus the $200,000 he had already received under the Settlement Agreement, plus the statutory pre-judgment interest of 9%, as well as attorneys' fees and punitive damages. *See* Pl.'s Post-Trial Brief at 22, attached as Exh. D to the Suppl. Decl. of Thomas J. Fleming [ECF No. 24-1].[4] When the Defendant failed to provide an accounting, therefore, the State Court entered a judgment for $2,201,780.48 based on the evidence on damages at trial as calculated by the Plaintiff in his post-trial brief. *See* Judgment at 2; Order at 2; *see also* Pl.'s Post-Trial Brief at 22 (explaining damages calculation based on evidence at trial); *cf. Onrubia de Beeck v. Lopez Costa*, 959 N.Y.S.2d 628, 640 (Sup. Ct. N.Y. Cnty. 2013) (citing *Conteh v. Hand*, 650 N.Y.S.2d 723 (App. Div. 1st Dep't 1996)) (discussing type of evidence necessary to establish damages at an inquest).

---

[4] The Defendant had an opportunity to submit a post-trial brief but did not do so. *See* Order at 1.

The lack of discussion of the amount of damages in the Post-Trial Decision itself does not bar the application of collateral estoppel to the Judgment. A similar argument was rejected in *Vyshedsky v. Soliman* (*In re Soliman*), 515 B.R. 179 (Bankr. S.D.N.Y. 2014). In *In re Soliman*, the bankruptcy court considered whether the amount of a pre-petition default judgment conclusively determined the amount of damages owed to the plaintiff. *Id.* at 192. The defendant argued that the state court's determination of damages at an inquest should not be given preclusive effect and that the bankruptcy court should make an "independent determination of the amount of damages owed to the [p]laintiff." *Id.* at 183, 192. The bankruptcy court concluded that the state court judgment established the amount of the debt and that the defendant could not obtain a "(re)trial here on the amount of the debt. The elements of the denial of discharge claim focus solely on the Debtor's conduct, not on the amount of the debt that was established by the state court judgment . . . ." *Id.* at 183. The court noted that its role "is to determine whether a debt is non-dischargeable under the Bankruptcy Code. If the [bankruptcy court] concludes that the debt is non-dischargeable, the [c]ourt must recognize, by reason of claim preclusion, the state court's damages determination in the [j]udgment." *Id.* at 192 (citing cases); *see De Curtis v. Ferrandina* (*In re Ferrandina*), 533 B.R. 11, 30 (Bankr. E.D.N.Y. 2015) (concluding that as "monetary awards were proper under New York State and/or City Laws, and because the employment discrimination and retaliation claims under New York State and the City Law each satisfy the § 523(a)(6) elements," the plaintiff was entitled to summary judgment that debtor is precluded from relitigating the propriety of monetary award).

The Plaintiff also cites two cases from the Bankruptcy Court for the Middle District of Georgia to support his argument that the Court should not give the Judgment preclusive effect. *See* Def.'s Opposition ¶ 30. But these cases are distinguishable. In *Chevy Chase Bank, FSB v.*

15

*Harkins* (*In re Harkins*), 302 B.R. 927 (Bankr. M.D. Ga. 2003), the court did not apply collateral estoppel to a state court default judgment entered for failure to respond to discovery where the defendant had not "'engaged in dilatory and deliberately obstructive conduct' in the state court" and was acting on the advice of counsel. *Id.* at 929 (citation omitted). In the second case cited, *Bass v. Barber* (*In re Barber*), 316 B.R. 391 (Bankr. M.D. Ga. 2004), the plaintiffs conceded collateral estoppel did not apply to determine whether a state court default judgment was non-dischargeable but argued that "as to the non-dischargeable nature of the debt, collateral estoppel would apply to the amount of damages." *Id.* at 392. The court held collateral estoppel did not apply because there was no hearing to determine if the defendant was liable. *Id.* at 394. By contrast here, the State Court held a trial as to the Defendant's liability and it is undisputed that the Defendant participated in that trial. *See* Post-Trial Decision at 3; *see also* Def.'s 7056-1 Stmt. ¶ 9; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 9.

Turning to the second collateral estoppel element, the Court finds that the Defendant had a full and fair opportunity to litigate the issue in the prior action. *See Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985). The Defendant was properly served in the underlying action and participated in the case from 2007 to 2012, appearing at the trial and testifying on his own behalf. *See* Post-Trial Decision at 3; Def.'s 7056-1 Stmt. ¶ 9; Pl.'s Response to Def.'s 7056-1 Stmt. ¶ 9. The Defendant also had an opportunity to submit a post-trial brief and was even granted an extension of time to do so but he did not submit any papers in opposition to the Plaintiff's post-trial brief. *See* Post-Trial Decision at 19 n.8; *see also* Order at 1.

Finally, the Defendant argues that the Judgment is not entitled to preclusive effect because it is based on his failure to file and serve an accounting and not the State Court's finding of fraud. *See* Def.'s Opposition ¶¶ 9, 11, 13. The Defendant argues that his failure to account is

16

"more akin to a default judgment then a true assessment of liability after the conclusion of trial[,]" and thus, collateral estoppel is improper. *See id.* ¶ 11. This argument is unpersuasive for two reasons. First, the Judgment is not akin to a default judgment, because the Defendant actively participated in the trial in State Court, deciding to not cooperate as to an accounting only after the trial was completed and a finding of fraud had been made. *Cf. Evans*, 469 F.3d at 282–83 (noting the default judgment could serve as a basis for collateral estoppel in Section 523(a) non-dischargeability case where state court made fraud finding after evidence was presented at an inquest). Second, the Judgment arises from the State Court's finding of fraud for the reasons stated above, not the failure to account.

## CONCLUSION

For the reasons set forth above, the Court finds that the Judgment is excepted from discharge under Section 523(a)(4) and grants the Plaintiff's motion for summary judgment. The Plaintiff shall settle an order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/ Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon counsel for the Defendant.

Date:   New York, New York
        September 26, 2016

                                        */s/ Sean H. Lane*_____
                                        UNITED STATES BANKRUPTCY JUDGE